IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 10-16-1 |
| v. : | |
| : | CIVIL NO. 13-2239 |
| LAWRENCE MURRAY : | |

MEMORANDUM

TUCKER, C.J.                                                                           June 25, 2015

Presently before the Court is Petitioner Lawrence Murray's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Petitioner's *pro se* Memorandum in Support, the Government's response, the Declaration of Jack Meyerson, Esquire, and Petitioner's counseled Reply. Upon careful consideration of the parties' briefs and exhibits, the record of this case, and for the reasons that follow, the Court will DENY the motion.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On October 26, 2010, a jury convicted Petitioner Lawrence Murray and co-defendant Ingrid Guthrie of one count of conspiracy in violation of 18 U.S.C. § 371 (Count I); thirteen counts of aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2) (Counts II-XIV); one count of bank fraud in violation of 18 U.S.C. § 1344 (Count XV); one count of wire fraud in violation of 18 U.S.C. § 1343 (Count XVI); one count of providing false statements to the U.S. Citizen and Immigration Services ("CIS") in violation of 18 U.S.C. § 1001 (Count XVII); and two counts of willfully filing a false tax return in violation of 26 U.S.C. § 7206(1) (Counts XVIII-XIX).

Evidence at trial showed how Petitioner engaged in a fraudulent tax scheme during his operation of a tax consulting business, the Tax Doctor Corporation ("TDC"). Former TDC clients testified that Petitioner had advised them on how to fraudulently structure personal and business finances in order to minimize their tax liability. Two testified that Petitioner falsified additional tax returns showing higher income than those filed with the IRS in order to aid in obtaining loans. The evidence also included testimony from TDC employees and recordings of Petitioner explaining his scheme to undercover agents. The false statement charge stemmed from Petitioner's submission to CIS, in support of his Chinese then-fiancée's visa application, of his own false tax returns and a letter purported to be from an independent accountant. In reality, Petitioner had prepared the returns himself and the letter was written by a TDC employee.

On January 24, 2011, the Court denied Petitioner's motion for acquittal or, in the alternative, for a new trial. On January 26, 2011, during an initial sentencing hearing, the Court sentenced Petitioner to 170 months' imprisonment and five years of supervised release and ordered restitution of $3,331,825.53 and a special assessment of $1,900. Petitioner timely appealed to the Third Circuit, raising the following arguments: (1) the 170-month sentence was unreasonable because it (a) was based on an unreasonable extrapolation of tax loss, (b) erroneously included a two-level enhancement pursuant to the U.S. Sentencing Guidelines Manual § 2T1.1(b)(1) for criminally-derived income, and (c) failed to sufficiently consider Petitioner's age and health; (2) the Government improperly vouched for its witnesses by questioning them about their immunity agreements; (3) Petitioner's Confrontation Clause rights were violated by the Government calling his former attorneys to testify about letters that they had written to the IRS in connection with a civil audit; (4) there was insufficient evidence to support Petitioner's bank and wire fraud convictions because Murray lacked specific intent since

he never made any direct representations to the banks and never put them at risk of loss; and (5) there was insufficient evidence to support a conviction for making a false statement to CIS because the false statement was not material. Brief for Appellant at 3-4, *U.S. v. Murray*, 468 F. App'x 104 (3d Cir. 2012) (No. 11-1245).

In an unpublished opinion dated March 8, 2012, the Third Circuit upheld Petitioner's conviction, but remanded the case for resentencing. *U.S. v. Murray*, 468 F. App'x 104 (3d Cir. 2012). Specifically, the court rejected the argument that the Government improperly vouched for their witnesses, held that testimony by Petitioner's former attorneys did not violate the Confrontation Clause, and found the evidence sufficient to support convictions for bank fraud, wire fraud, and false statements. *Id.* at 107-109. Regarding sentencing, the court remanded on grounds that this Court erroneously applied a two-level enhancement under U.S.S.G. § 2T1.1(b)(1), but it rejected Petitioner's argument that this Court's estimate of tax loss was unreasonable. *Id.* at 109-110. Accordingly, on April 27, 2012, this Court resentenced Petitioner to 144 months' imprisonment.

Petitioner timely filed the present *pro se* motion for collateral relief under 28 U.S.C. § 2255 on April 26, 2013. The Government responded on August 30, 2013 and Petitioner, through counsel,[1] replied on November 25, 2013. Petitioner also filed a motion for discovery in connection with his § 2255 motion, which this Court denied on January 10, 2014.

## II. STANDARD OF REVIEW

A prisoner in custody under sentence of a court may move the court to vacate, set aside, or correct the sentence by claiming that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

---

[1] Except for this single instance, which refers to habeas counsel, this Court's references to "counsel" are to Jack Meyerson, Petitioner's attorney at trial, at sentencing, and on appeal.

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).  Section 2255 permits habeas relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *U.S. v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (quoting *U.S. v. Addonizio*, 442 U.S. 178, 185 (1979)).  The court must hold an evidentiary hearing unless the § 2255 motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.  28 U.S.C. § 2255(b).  An evidentiary hearing is not required if the motion, files, and records conclusively show that the motion should be denied as a matter of law.  *Id.* Whether a hearing is warranted is within the sound discretion of the district court.  *U.S. v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  Further, *pro se* habeas petitions are to be construed liberally, but a *pro se* petitioner is not excused from the duty to prove a "set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

Petitioner alleges fourteen "grounds" upon which he is entitled to habeas relief, but several of these "grounds" are alleged more than once.  Construing Petitioner's pleading liberally, the Court has identified the following thirteen claims raised by Petitioner:

(1) Petitioner is actually innocent.
(2) The Government tampered with witnesses.
(3) The Court erred in instructing the jury.
(4) 18 U.S.C. § 371 and 26 U.S.C. § 7602 are unconstitutionally vague.
(5) The Government's tax expert witness was not qualified.
(6) Petitioner's sentence for bank fraud and tax fraud violates the Double Jeopardy Clause.
(7) The evidence was insufficient to support a conviction for bank fraud.
(8) The execution of the search warrant was overbroad.
(9) Petitioner's conviction for making false statements violates due process.
(10) The Court's loss determination was erroneous.
(11) The Government mischaracterized evidence.

(12) Defense counsel provided ineffective assistance of counsel during plea negotiations, at trial, and on appeal.
(13) The alleged errors cumulatively entitle Petitioner to relief.

*See* Pet'r Mot. to Vacate, Set Aside, or Correct Sentence, Doc. 170 [hereinafter Pet'r Mot.]; Pet'r Mem. in Supp. of Mot. to Vacate, Set Aside, or Correct Sentence, Doc. 177 [hereinafter Pet'r Mem.]. Several of these claims—specifically, claims numbered 2-6, 8, 9, and 11—are ones that Petitioner did not raise on direct appeal. The Court first determines whether these claims are procedurally defaulted. The Court will then address the remaining claims on their merits.

### A. Procedural Default

"Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review. Put differently, a movant has procedurally defaulted all claims that he neglected to raise on direct appeal." *Hodge v. U.S.*, 554 F.3d 372, 378-79 (3d Cir. 2009) (citing *Bousley v. U.S.*, 523 U.S. 614, 621 (1998)). Procedural default does not apply if a movant can prove either actual innocence or a valid cause for the default and prejudice resulting from the default. *Id.* at 379.

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). Actual innocence in this regard means "factual innocence, not mere legal insufficiency." *Id.*; *see McQuiggan v. Perkins*, 133 S. Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass [if] the impediment is a procedural bar . . . We caution, however, that tenable actual-innocence gateway pleas are rare[.]").

In pleading actual innocence, Petitioner argues that his trial was not fair and that he "did not commit tax fraud, or assist in tax fraud, because he had no intent to deceive." Pet'r Mem. 8.

5

He contends, "Each of the deductions advised, and business moves advocated by [Petitioner] to his clients was sound advice backed by experience and legal and binding sources." *Id.* Attached as exhibits to Petitioner's supporting memorandum are news articles and book excerpts regarding IRS activities, corporate tax practices, and investing advice. *See* Pet'r Mem. Ex. 3. Neither the exhibits, which are irrelevant, nor Petitioner's arguments present new grounds that support a claim of actual innocence. Petitioner's protests of insufficient trial evidence do not amount to proof of actual innocence. To the contrary, the jury, this Court, and the Third Circuit have found the evidence to be sufficient for conviction. *See* Jury Verdict Form, Doc. 76; Order Denying Mot. for Acquittal, Jan. 24, 2011, Doc. 100; *Murray*, 468 F. App'x at 106. Thus, Petitioner fails to satisfy the "actual innocence" exception to the procedural default rule.

Though a "cause and prejudice" exception to procedural default is available, Petitioner does not advance any argument to that effect. He raises several claims of ineffective assistance of counsel, which may constitute cause for procedural default. *See Hodge*, 554 F.3d at 379. None, however, address why Petitioner's otherwise procedurally defaulted claims were not raised on direct appeal. The Court therefore concludes that Petitioner has defaulted on claims numbered 2-6, 8, 9, and 11, which are hereby dismissed.

B.     **Remaining Habeas Claims**

The Court will now evaluate Petitioner's remaining § 2255 claims on their merits. These are: (1) Petitioner is actually innocent, (7) the evidence was insufficient to support a conviction for bank fraud, (10) the Court's loss determination was erroneous, (12) defense counsel provided ineffective assistance of counsel during plea negotiations, at trial, and on appeal, and (13) the alleged errors cumulatively entitle Petitioner to relief.

The Government contends that a freestanding claim of actual innocence is not available under § 2255. Indeed, neither the Supreme Court of the United States nor the Third Circuit has held that a freestanding claim of innocence merits habeas relief. *See McQuiggan*, 133 S. Ct. at 1931 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Sistrunk v. Rozum*, 674 F.3d 181, 187 (3d Cir. 2012) (reserving the issue and allowing habeas petitioner's claim to proceed on due process grounds). This Court, by liberal construction, does not view Petitioner's claim solely as a freestanding claim of actual innocence, but as one that also implicates Petitioner's right to due process. For example, in the same section in which Petitioner's memorandum states that he "did not commit tax fraud," it also asserts that his "trial was not fair." Pet'r Mem. 7-8.

As discussed, however, Petitioner does not present sufficient evidence to support his claim of actual innocence or to challenge the sufficiency of evidence underlying his conviction. At trial, the Government presented evidence that Petitioner established TDC as a fraudulent tax preparation and financial services firm, that Petitioner hosted seminars about his tax fraud scheme, and that Petitioner directed clients to write off personal living expenses as deductible business expenses. The evidence also included recordings of Petitioner discussing his fraudulent scheme with undercover IRS agents. Accordingly, the Court concludes that sufficient evidence supported Petitioner's conviction beyond a reasonable doubt on all counts, including bank fraud, and that no constitutional error occurred.

Regarding Petitioner's argument that the Court's loss determination was erroneous, the Court does not agree. Under federal sentencing guidelines, "If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1). The guidelines note, "In some

7

instances, . . . the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." *Id.* application note 1. The Court accepted the Government's loss calculation, which was based on an extrapolation of 46 fraudulent returns by twenty TDC clients, yielding a tax loss of $955,077, to which a multiplier of three was applied to estimate tax losses from at least 107 clients, for a total tax loss estimate of $2,865,231. Added to this total was $466,594.53, which is the undisputed loss from the personal and corporate tax returns filed by Petitioner and his co-defendant. The resulting loss calculation was $3,311, 825.53, which this Court found to be reasonably based on the evidence. *See* Sentencing Tr. at 57. Indeed, the Third Circuit noted the loss figure to be a "reasonable" estimation. *See Murray*, 468 F. App'x at 110-11; *cf. U.S. v. Gricco,* 277 F.3d 339, 355 (3d Cir. 2002) (remanding for resentencing because the court failed to make specific factual findings regarding the estimated tax loss), *overruled on other grounds as stated in U.S. v. Cesare*, 581 F.3d 206, 208 n.3 (3d Cir. 2009). This Court finds no error in the loss determination entitling Petitioner to habeas relief.

Petitioner's ineffective assistance of counsel claims may be considered in the first instance on a § 2255 motion. *See Massaro v. U.S.*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."). Such claims are analyzed under a two-prong test articulated by the Supreme Court of the United States in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). "A finding against the petitioner under either prong is sufficient to find for the government." *U.S. v. Clark*, Crim. No. 08-508-01, 2015 WL 765984, at *3 (E.D. Pa. Feb. 24, 2015). First, the petitioner must show that counsel's performance was deficient by demonstrating that it fell below an objective standard of

8

reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, even if counsel's conduct was professionally unreasonable, the petitioner must show that it prejudiced the defense by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In evaluating counsel's performance, the court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. The *Strickland* test applies to legal proceedings at trial, at sentencing, and on appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 481-82 (2000); *see also Glover v. U.S.*, 531 U.S. 198, 203-04 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."); *Harrington v. Gillis*, 456 F.3d 118, 132 (3d Cir. 2006) ("Because an appeal is a critical stage of criminal proceedings, a defendant is entitled to the effective assistance of counsel in perfecting an appeal." (citing *Flores-Ortega*, 528 U.S. at 483)).

Petitioner argues that his attorney, Jack Meyerson, who represented him at trial, on appeal, and at both sentencing hearings, provided ineffective assistance by: (a) providing poor direct and cross examination of witnesses; (b) failing to call a tax expert; (c) failing to consider suppression; (d) being insufficiently experienced in tax matters; (e) telling the Court at sentencing that Petitioner would not appeal the sentence; (f) advising Petitioner to reject the Government's 24-month plea offer; (g) failing to challenge the Government's characterization of the evidence; (h) failing to assert a good faith defense; (i) failing to raise on direct appeal the fact that this Court was improperly influenced by an incident report that Petitioner received for teaching a course at the Federal Detention Center; and (j) failing to challenge on direct appeal the Government's loss calculation. *See* Pet'r Mem. 34-36, 46-57, 60-62; Pet'r Reply to Resp. to Mot. to Vacate, Set Aside, or Correct Sentence 2-6, Doc. 199 [hereinafter Pet'r Reply].

9

The Court finds that Petitioner falls short in demonstrating how his counsel was ineffective under the *Strickland* standard. Petitioner first claims that Mr. Meyerson's "cross- & direct-examination [sic] of witnesses was wanting due to lack of counsel's domain knowledge[.]" Pet'r Mot. 4. More specifically, Petitioner alleges that counsel "did not delve into the aspects of the contractual relationship which Tax Doctor and Murray had with clients regarding alternate dispute resolution, advice for dealing with audits, and disclaimers" and that counsel "did not dig deep enough, to expose the heavy hand of the IRS and the threat of prosecution that was implied to every former client of Tax Doctor." Pet'r Mem. 51. It is unclear how testimony regarding TDC client contracts, if relevant, would have affected the outcome of the case. The record also shows how trial counsel sought, on cross-examination, to reveal TDC client witnesses' exposure to possible IRS prosecution in an attempt to impeach credibility. *See, e.g.,* Trial Tr. at 54-57, Oct. 18, 2010; *id.* at 109-112. Petitioner has therefore failed to demonstrate how counsel's direct and cross examinations fell below an objective standard of reasonableness.

Petitioner next argues that counsel was ineffective for failing to hire a tax expert to testify for the defense at trial. Mr. Meyerson's trial strategy was based on questioning the credibility of Government witnesses and blaming TDC clients for providing false information. *See* Trial Tr. at 44, Oct. 14, 2010. The Court finds this strategy to be reasonable. The strategy was not to show that the returns were lawful or that Petitioner was acting in good faith. Thus, the utility of a tax expert would have been minimal and the decision not to hire one was not below the standard of reasonableness. Further, Mr. Meyerson did call an attorney as an expert on matters of corporate structures and their use in asset protection and liability minimization. *See* Trial Tr. at 2-26, Oct.

21, 2010. Because this expert testified to matters similar to what a tax expert would have testified to, the Court finds no prejudice from counsel's failure to call a tax expert.

Petitioner alleges ineffective assistance because "suppression was not considered[.]" Pet'r Mot. 14. He fails, however, to specify the evidence introduced at trial that should have been suppressed. The Court therefore denies Petitioner's claim on the basis that it is vague and conclusory. *See U.S. v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (stating that vague and conclusory § 2255 claims are subject to summary dismissal).

Petitioner alleges that his attorney was ineffective because of his general lack of tax expertise. He does not, however, provide support for this claim. Rather, prior to working on Petitioner's case, Mr. Meyerson had handled in excess of twenty tax cases beginning in the 1970s, both as a prosecutor and as a defense attorney. Meyerson Decl. ¶ 3, Doc. 190. Petitioner's claim is therefore unsubstantiated.

Petitioner next claims that Mr. Meyerson "curried favor with the trial court at sentencing by inaccurately and without authorization telling the court that Murray would not take an appeal, in apparent hopes of getting a lesser sentence." Pet'r Mot. 15. At Petitioner's resentencing, defense counsel represented, "I can assure the court today that following these proceedings, unless something very strange were to occur today with regard to the sentence, Mr. Murray has no intention of any further appeals or collateral attack on the sentence." Resentencing Tr. at 4, Apr. 27, 2012; *see id.* at 11-12. In response, the Court clarified that, notwithstanding counsel's statements, Petitioner had expressed an intent to file a § 2255 motion and the Court would permit such action. *Id.* at 12. The Court also expressly advised Petitioner of his rights to appeal, which further indicates how Mr. Meyerson's statements had no influence on the sentence imposed. *Id.* at 14-15. Thus, this claim fails for lack of prejudice.

Petitioner argues that Mr. Meyerson was ineffective with regard to a 24 month plea offer because counsel did not inform Petitioner of "the legal aspects of the plea" and Petitioner's rejection of the plea "was not an informed rejection." Pet'r Mem. 61. Petitioner avers that "if [he] would have known that the United States had a conviction rate of 97% at trial" or "if [his] tenuous legal position had been explained correctly," he would have changed his decision. *Id.* 61-62. Defendants have a Sixth Amendment right to counsel in the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). To prevail under the *Strickland* standard in the context of rejecting a plea offer, a petitioner must show that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385. Throughout Petitioner's criminal case at the district and appellate levels and in the present motion, he has maintained his innocence.[2] In Petitioner's post-trial motions and appeal to the Third Circuit, he argued that the evidence presented was insufficient for a reasonable jury to convict. Pet'r Mot. for Acquittal, Doc. 88; *Murray*, 468 F. App'x at 107-09. In light of Petitioner's continued claims of innocence, the Court finds that Petitioner fails to prove a reasonable probability that he would have accepted the plea offer but for Mr. Meyerson's advice.[3] *See, e.g., Wheeler v. Rozum*, 410 F. App'x 453, 459-60 (3d Cir. 2010) (accepting the

---

[2] The only exception to Petitioner's consistent claims of innocence is a statement submitted as part of his resentencing in which Petitioner accepts responsibility for his criminal conduct. This statement came after having exhausted his direct appeal to the Third Circuit and was intended to support leniency in this Court's resentencing. Petitioner's acceptance of culpability, however, is contradicted by more recent claims of innocence made in the present § 2255 motion.

[3] The nature of Mr. Meyerson's counsel regarding the plea offer remains disputed. Petitioner alleges, "Without discussion, the plea was turned down." Pet'r Mem. 61. Meanwhile, Mr. Meyerson avers that he met Petitioner in

state court's finding that a habeas petitioner would not have accepted a plea offer in light of his post-conviction testimony that he was innocent of the crimes for which he was convicted). Thus, the Court concludes that Petitioner's claim regarding counsel's performance during plea negotiations does not satisfy the prejudice prong of *Strickland*.

Petitioner alleges that counsel was ineffective for failing to challenge the Government's mischaracterization of evidence at trial. Petitioner identifies four specific errors made at trial: (1) that counsel failed to challenge the propriety of a Government exhibit showing a letter from Petitioner's civil attorney to the IRS stating that there were no records in Petitioner's home juxtaposed with a photograph of records in Petitioner's home; (2) that counsel failed to demonstrate how tax deductions may be legally applicable; (3) that counsel did not challenge the Government's use of gross income numbers instead of net income numbers; and (4) that counsel failed to elicit evidence that former TDC employees were terminated for dishonesty. *See* Pet'r Mem. 50-51. Petitioner, however, fails to demonstrate how these alleged errors were either unreasonable or prejudicial. Mr. Meyerson explained that some of the documents found in Petitioner's home predated the attorney's letter and some had water damage, which could belie Petitioner's claims that a flood destroyed all documents. Meyerson Decl. ¶ 15. Choosing not to argue the point to foreclose rebuttal from the Government was a reasonable decision. Additionally, the record refutes Petitioner's other allegations because Mr. Meyerson did use cross-examination in an attempt to illustrate how tax returns were proper and deductions lawful. *See, e.g.,* Trial Tr. at 106-108.

Petitioner makes similar claims of ineffective assistance with regard to counsel's failure to challenge the Government's mischaracterization of evidence at his first sentencing hearing.

---

person to discuss the offer, conveyed the full terms of the offer, and discussed the weaknesses of Petitioner's case. Meyerson Decl. ¶ 16. The Court, however, need not resolve this dispute in rendering its decision.

13

He alleges that Mr. Meyerson failed to inform the Court that he had no personal assets and did not challenge testimony that Petitioner had a disciplinary incident during his presentence detention. The Court finds that Petitioner has not shown prejudice in connection with these alleged errors. The Court's sentence was based on factors set forth in 18 U.S.C. § 3553(a) and, at 170 months of incarceration, it fell below the guideline range of 210-262 months. See Presentence Report ¶ 122, Jan. 14, 2011 [hereinafter 2011 PSR]; Sentencing Tr. at 57-59, Jan. 26, 2011. Moreover, after remand from the Third Circuit, Petitioner was resentenced at a subsequent hearing in which neither of these errors occurred.

Petitioner next argues that his attorney provided ineffective assistance by failing to assert a good faith defense. Mr. Meyerson explains how he chose not to pursue a good faith defense because doing so would require him to call Petitioner to the stand. Meyerson Decl. ¶ 9. This would have opened the door for the Government to impeach with evidence of Petitioner's prior tax fraud conviction, which would have certainly harmed the defense. Indeed, to argue good faith, especially in light of Petitioner's prior conviction on nearly identical charges, would likely have been unavailing. The Court finds counsel's decision to be objectively reasonable. The Court also instructed the jury on willfulness as "a voluntary and intentional violation of a known legal duty." Trial Tr. at 20, Oct. 22, 2010. It continued, "A defendant's conduct is not willful if he or she acted through negligence, mistake, or due to a good faith misunderstanding of the requirements of the law. A good faith belief is one that is honestly and genuinely held." *Id.* Accordingly, if the jury found good faith, it would have acquitted Petitioner. Thus, no prejudice resulted from defense counsel's failure to present a good faith defense.

Petitioner contends that his attorney provided ineffective assistance on appeal when he failed to challenge this Court's alleged consideration at initial sentencing of an incident report

14

made during Petitioner's detention. Mr. Meyerson had concluded that this issue was immaterial to the sentence imposed and would not be a viable claim on appeal. Instead, counsel chose to pursue a different ground for resentencing, which eventually led to a remand. Meyerson Decl. ¶ 17; *see Murray*, 468 F. App'x at 109-11. The Court concludes that appellate counsel's performance was objectively reasonable.

Finally, Petitioner argues that "counsel was ineffective—both at sentencing and on appeal—for failing to mount a challenge to the loss determination." Pet'r Reply 3. He contends that "it was the job of defense counsel to pore through all the records to determine the exact loss amount and to consult an expert to verify the conclusion." *Id.* Instead, at sentencing, Mr. Meyerson objected to the Government's tax loss calculation on grounds that it was not limited to the loss determined by the jury, it did not make allowances for legitimate deductions, a full audit was not performed, and the multiplication by three of the audited figure did not meet the preponderance standard. 2011 PSR 30 (Objection No. 6); Sentencing Tr. at 4-6. On appeal, Mr. Meyerson argued that the loss calculation was unreasonable and unsupported by a preponderance of evidence because it was an extrapolation from a small, unrepresentative sample of returns and it did not account for valid deductions. Brief for Appellant at 18-22, *U.S. v. Murray*, 468 F. App'x 104 (2012) (No. 11-1245). Counsel's conduct in contesting the loss calculation may not have been as extensive as Petitioner now desires, but it was objectively reasonable. Counsel presented several arguments that question the loss calculation, which was a sound strategy in light of the circumstances at the time. *See Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.").

Moreover, the Court finds that no prejudice resulted from Mr. Meyerson's failure to hire an expert to verify the tax loss. At the initial sentencing, this Court considered the opinion of an

expert, a certified public accountant, who opined that the Government's loss calculation was unreasonable and unreliable. The Court nevertheless accepted the Government's figure on the estimated tax loss. The expert opinion was not presented on appeal, but no prejudice resulted because the Third Circuit remanded for an unrelated procedural error. *See Murray*, 468 F. App'x at 111. At resentencing, this Court again accepted the Government's loss calculation. Petitioner does not show how resentencing would have been different if an expert opinion were offered, when the Court reached the same conclusion at the initial sentencing where an expert opinion was offered. Thus, no prejudice resulted and Petitioner's ineffective assistance claim on this ground fails.

Lastly, Petitioner seeks relief on grounds that individual errors cumulatively amount to constitutional error. Individual errors may entitle a habeas petitioner to relief if, when combined, the resulting prejudice "undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (citing *Albrecht v. Horn*, 471 F.3d 435, 468 (3d Cir. 2006)). "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Id.* (quoting *Albrecht*, 471 F.3d at 468). The foregoing analysis demonstrates that no individual errors occurred and, by extension, no "actual prejudice" resulted. Accordingly, the Court dismisses Petitioner's claim of cumulative error.

## IV. CONCLUSION

For the reasons set forth above, the Court denies Petitioner's § 2255 motion. An appropriate order follows.